Mr. Bernstein is here for the petitioner, Ms. Browning for the department, and Mr. Bernstein, you may begin. Thank you, Your Honor. May it please the Court. Robert Bernstein for Finesse Meridor. I've reserved four minutes for rebuttal. Finesse Meridor is the father and husband of U.S. citizens. He qualifies for a U visa, and he applied for and obtained a waiver of inadmissibility from the Attorney General under Section 1182d3. Because the plain language of that provision grants the Attorney General the authority to grant such a waiver, that should be the end of the story in this case. Robert, the Board of Immigration Appeals disagrees with you. Why aren't we bound by its 2016 decision in the matter of common? This is not a case for Chevron deference because the text of the statutory scheme is unambiguous. If we start with the statutory scheme before thinking about the case for Chevron deference, the only way that the second provision at issue here, paragraph D14, could possibly negate or rob the first provision, D3, of its plain meaning would be if Congress had enacted an implied repeal. But there's nothing about the text or legislative history of paragraph D14 that suggests that Congress enacted an implied repeal. There's nothing about the text or legislative history of the enactment in D. You would agree with me, though, that if I disagree with you about whether or not we can rely on the plain meaning of the statute, if it's ambiguous, we have to defer to the Board of Immigration Appeals, the agency's interpretation of the statute? I don't think that's correct, Your Honor, for three reasons. This is not a case for Chevron deference because absent some kind of grammatical or syntactical ambiguity in the statute, there's no room for Chevron deference. That's a kind of Chevron step one problem. And then thinking more holistically, there's essentially a Chevron step zero problem. Absent an indication that Congress intended to delegate gap-filling authority in this instance to the Board, there's no room for the Board to fill in the gaps in the statute. And then an even broader problem still— The Supreme Court said in very different contexts that you give Chevron deference where Chevron applies to BIA decisions. That's filling in those gaps. I don't think it's quite that simple. I think another problem here beyond the Chevron step zero problem is that what the Board has done in Khan is attempt to apply and interpret regulations from another agency. And there's no room for deference. Chevron, our, any kind of deference when the Board is purporting to interpret the regulations from another agency. Essentially what we have here is two statutes that can be read harmoniously. In order for the second statute to in any way affect the impact of the first statute, there needs to be an implied repeal. The Supreme Court has said time and again that an implied repeal requires either one of two conditions. It requires either clear and manifest congressional intent or two statutes that truly stand in irreconcilable conflict. But neither condition exists here. On congressional intent, we talked about the 2000 enactment of D14. But there's also nothing about the text or legislative history of the 2006 amendment when Congress moved the Attorney General's D14 power to the Secretary of Homeland Security. And this is also not a case of irreconcilable conflict. The two statutes can coexist and provide dual tracks to a waiver determination. And if two statutes are capable of coexistence, the Supreme Court has explained that it's the job of this court to give effect to both statutes if possible. Although there's certainly some overlap between the D3 power and the D14 power, redundancies across statutes are not at all unusual events. If both statutes can be given force, they both have to be regarded as effective. This is, if anything, an unusual case in which the plain text of the statute of D3 happens to point in the same direction as the history, structure, and purpose of the statute. The history of this statutory scheme, if anything, only confirms that the D14 power was intended as a context-specific enhancement and not a replacement for the D3 power. The text of D3, what we might call the cash-all or the blanket provision, dates verbatim to the original Immigration Act of 1952. Since then, Congress has repeatedly amended Section 1182 in the Immigration Code while leaving the blanket provision untouched. And then in 2000, when Congress added D14 into the statutory scheme, the trend in statutory drafting at the time was to create context-specific enhancements in the context of waiver provisions in the Immigration Code. And then in 2006, when Congress transferred the D14 power, Congress only further differentiated between the two statutes when it gave the D14 power to the Secretary of Homeland Security. And on that point, I think it's important to note on the question of overlap and redundancy, each statute does reach some distinct cases. The D14 power is broader than the D3 power in certain respects, and the D3 power is broader than the D14 power in certain respects. If Mr. Meridor had gone before the immigration judge and said, I'm inadmissible, I'd like a waiver of inadmissibility, I think there's no question or there should be no question that the immigration judge would have that authority. But then if Mr. Meridor said, I'd like the waiver because I'm applying for a U visa, the government's position is that the immigration judge would suddenly lose the authority to grant the waiver. The D3 power is broader in certain respects. Reversal of the factual finding that Mr. Meridor's risk of harm has been greatly diminished because he's not been in trouble since 2008? I think, if anything, the Board of Immigration Appeals, Your Honor, exceeded its own authority under the immigration regulations and reversing the immigration judge. Judge Slavin, a well-respected immigration judge in Florida, issued a remarkably thorough 22-page opinion analyzing Mr. Meridor's family ties, his criminal history, his educational background, and his connections to his family. Applying, there's no question that the immigration judge applied to the correct three-factor Henry-Huronka standard in that the immigration judge analyzed every factor in substantial detail. The problem, however, is that the board's own authority is confined by its regulations. The immigration regulations prohibit the board from engaging in de novo review of factual and credibility determinations in the course of deciding an appeal. And a neighboring regulation prohibits the board from engaging in fact-finding in the course of deciding an appeal. That's exactly what the board did in this case when it's- I thought the board, and maybe I'm reading it incorrectly, but I thought the board accepted the underlying historical factual findings and then thought those factual findings under the appropriate legal standard don't warrant a waiver. Do you think something else happened? I do. I think what the board actually did in this case is different, but even if the board had done what you're honor is hypothesizing, I think that, too, would be problematic. But the board, I think where the board went most- The board can't exercise discretion. If I interpreted what the board did correctly, the board doesn't have discretion to apply the inadmissibility standard differently than an IJ? As this court said in ZHU, the board can apply the inadmissibility findings differently, but it must do so through the prism of clear error review. The board went astray here when reviewing the immigration judge's determination about Mr. Meridor's likelihood of future recidivism. One of the in-recronka factors is an analysis of Mr. Meridor's risk of harm. Under this court's case law, this determination, a determination about future recidivism under the ZHU case is a factual finding. The immigration judge considered all the factors, her testimony for Mr. Meridor and his family over multiple days, and determined that Mr. Meridor's risk of harm from remaining in the United States was low. The board, however, with pretty bare-bones reasoning, simply stated that it was not persuaded by the immigration judge's determination that the risk of harm was low, and the board stated that the risk of harm, that Mr. Meridor's risk of harm was high without providing any reasoning, let alone skeletal reasoning of how it reached that determination. On the question of whether Mr. Meridor's risk of harm from remaining in the United States was high or low, the board was bound by clear error review as this court held in ZHU and in the Muniz case. It's true that at one point in the board's opinion, the board does use the term outweighed or reweighed, but the ZHU case and the Muniz case stand for the proposition that the board cannot couch a de novo review of factual determinations in, to use this court's language, the euphemistic language of reweighing. Back to the prior issue, LDG versus Holder doesn't help you, right? I believe it, sure. You don't really argue that case? If we haven't argued it, we certainly intend to argue it. We certainly believe that this court should follow Chief Judge Wood's opinion in LDG, as well as the Seventh Circuit's recent subsequent opinion in Bea Sanchez. On the question of LDG and Brand X, I would urge this court to base its holding in this case on the plain language of paragraph D3 to prevent the board from engaging in the kind of Brand X overruling that we saw in the Seventh Circuit. After the Seventh Circuit issued its opinion in LDG and held exactly as Mr. Meridor is urging in this case, the Board of Immigration Appeals, purporting to exercise its Brand X authority, overruled, attempted to overrule LDG and announced that it would not abide by that decision. That's remarkable. But what's more remarkable still is that the board said we will not follow that decision even in the Seventh Circuit, although LDG had based its holding on the plain language of the statute. In order to foreclose the board from doing this in this circuit, I would urge the court to issue a plain language holding. My remaining time is reserved for rebuttal. All right. I see you've reserved some time. Thank you, Mr. Bernstein. We'll hear from Ms. Browning. Thank you, Your Honor. May it please the court, Rachel Browning for the respondent. This case concerns the interaction between two sections of the INA, 1182 D3A2 pertaining to general waivers of inadmissibility available to non-immigrants seeking temporary admission, and subsection D14, which pertains to waivers specific to aliens petitioning for U visa status. The court does not need to interpret D14 as an implied repeal of the earlier subsection in order to find that that section confines to USCIS, the sole authority over waivers specific to people petitioning for U visa status. In this case, and in its published decision matter of Kahn, the board reasonably determined that the legislative intent behind the interplay of these provisions was unclear. We don't even go there, do we? As Mr. Bernstein argues, if we can look at the plain language of the statute and rely on the plain language of the statute as giving the Attorney General the discretion to issue a waiver, right? Certain waivers, that's correct. But you can't, you would have to ignore the plain language then of D14. What the board is simply saying is the way these two provisions interact, it's unclear what authority is then delegated to the immigration judge in this specific context. And what it did was it looked not just at DHS's authority over U visa petitions generally, but also in the past prior to U visas coming into being, immigration judges generally only had jurisdiction over waivers of temporary admission in very specific circumstances. And those were after an individual had applied prior to coming to the United States or at a port of entry and had been denied the waiver of inadmissibility, then they could be paroled for the limited purpose of the immigration judge determining whether they should be granted a waiver in that context. One of the problems with the argument is that, you know, we go back to the plain language of the statute and then the statute has been amended several times, but Congress has not amended that provision of the statute that Mr. Maraday relies upon. How do we interpret that? I don't think it's that, it hasn't amended it as for U visas, but it's created the separate provision specific to U visas at 214, in which it's delegated to DHS, the authority over that. We're just talking about two different, two very different contexts of the waiver of inadmissibility. We don't deny that 1182D3A2 gives the Attorney General general authority to decide certain, which applications for temporary admission will be reviewed by an immigration judge. But in this context, where you have a separate statutory scheme for a U visa petition, that belongs to DHS, which is delegated as authority to USCIS. And because the regulations make that waiver of inadmissibility part of the evidentiary submission to DHS, it's reasonable to interpret that whole process as belonging to DHS. It would frustrate the regulatory scheme to have an IJ deciding separately and concurrently. And in fact, in this case, it did because we got to the end of the... Because there's nothing... Because it simply doesn't work. In this case, the judge decided that she would grant the waiver of inadmissibility and then conceded that she had to order petitioner removed because she didn't have authority over the ultimate determination of whether he was eligible for a U visa. And his establishing his admissibility is part of that process, which USCIS then determined he was not eligible for. It's pretty requisite, but not enough. In other words, granting a waiver of inadmissibility doesn't necessarily mean you're going to get a U visa, right? Correct. That's part of the evidentiary process or part of the submission. So the IJ... I mean, tell me why this doesn't make sense to you. If Mr. Meridor is right, so I'm putting that qualifier in, why can't an immigration judge make the initial determinant of waiver of inadmissibility and then leave the ultimate discretionary call about whether or not to grant a U visa to the Secretary of Homeland Security? Why does that system not work? Well, for one thing, Your Honor, our position is that that's not what the statute says. The statute says that the IJ shall determine if there's a ground of inadmissibility and then may grant a waiver in its exercise of discretion. In this case, what you end up having, if you give the judge that authority as well, what happened in this case is the judge said, well, yes, you're eligible for a waiver, and USCIS nevertheless said, no, we don't think you are. And even after the judge and the board issued their decisions and they went back to, this is in petitioner's addendum, USCIS said, still, no, we disagree. And it had that authority to do that. So you end up with a decision of the IJ and a decision of the USCIS. There's nothing in the statute that suggests that an IJ's decision would then overrule that of USCIS. There's no statutory or regulatory mechanism that suggests that that's how this operates. And I think – Let me ask you one more question. Your reliance is on the language of D-14, right? Correct. There's, at least to me, a potential problem with D-14, because when it says that the Secretary of Homeland Security may waive the application of the subsection, it also has a qualifier, and the qualifier is in the Attorney General's discretion. That I think everybody agrees is a Scrivener's error. No, not everybody agrees. Well, petitioner has – Two courts have said that it's a Scrivener's error, but it's a very odd thing for a court to say, oh, I'm going to blot out the statutory language. It appears in the codification, and I'm just going to assume that Congress made a mistake. If judges were able to do that, we'd have a field day. Oh, that language must have been a mistake. Congress could not have been thinking about that. You've got language in the provision that you say gives exclusive authority to the Secretary of Homeland Security, a qualifier that then says in the Attorney General's discretion, and the Attorney General acts in immigration through IJs. What are we to make of that? I think you make of it what – you look at where the Attorney General has delegated authority over waivers of inadmissibility for temporary admission, and that delegation has been very specific and limited to a narrow set of circumstances, which we outline in our brief. And the fact that the governing regulations pertaining to U visas makes clear that the waiver of inadmissibility is part of that overall evidentiary process of determining a person's eligibility for a U visa. If that exact clause in the Attorney General's discretion is not a Scribner's error, then your position has some problems, right? Because then you're limiting the authority of the Secretary of Homeland Security to the discretion of the Attorney General, right? I would say it maybe lends argument that – or it lends persuasion to our argument that the statute is ambiguous and that the board – Why can't you make a decision by the Secretary of Homeland Security subject to the discretion of the Attorney General? You're basically allowing one high-level official to basically have the last call. You let one exercise discretion, and you let the other one decide whether that discretion was exercised appropriately or not. Why does that statutory scheme not work? I'm not sure I understand. You could give the Department of Homeland Security, through its secretary, the authority to decide waiver of admissibilities in U visa scenarios. And that's what we think the language provides. But also allow the Attorney General to have a say in the very same system. I think, though, it confuses that system when the ultimate decision over U visa eligibility has been confined to the Department of Homeland Security. And there's simply no mechanism within the statute or regulations that tell you what to do when those two agencies would come into conflict over this question. And I think that's what the board was looking at when it construed the statute. And I just want to also point out, the court need not get tangled up in this issue if it doesn't want to. Because ultimately, if you feel that the board should not be deferred to in terms of who has this authority, the board ultimately determined that Mr. Meridor did not merit a waiver as a matter of discretion. And that decision is not reviewable. Neither are the subsequent decisions of USCIS that determined that he's not eligible for the U visa or waiver. Those are confined to the agency's discretion, whether we're talking about the Department of Homeland Security or the Attorney General. And that's under 1252b2. And the board did not exceed the scope of its authority. It simply used its authority under the regulations to review de novo issues of discretion. It did not find additional facts. It looked at the facts that the judge relied on and simply balanced them differently and just determined that the extraordinary length of his criminal activity, the violent and severe nature of that activity was just not outweighed by the positive factors that he presented. USCIS reached virtually the same conclusion in its final determination as well. Those are fact-based determinations, discretionary determinations that this court does not have jurisdiction to review. It would, in fact, be issuing merely an advisory opinion over the issues presented in matter of con. Mr. Meridor says that what he thinks the BIA did was substitute its own factual findings for those made by the IJ and then using its own factual findings then decide the issue of waiver. Do you think that's inaccurate? I think that's inaccurate, yes, Your Honor. I think what the board looked at all of the things that the judge did. The judge herself acknowledged the extraordinary nature of the crimes that he committed over the course of his years here. The board just took a different view of how it weighed those factors, and this court can't reweigh the factors in the manner that Mr. Meridor would prefer. The IJ determined that Mr. Meridor's risk of harm has been greatly diminished because he has not been in trouble since 2008, right? That's a factual determination that the IJ, and then the board just disagreed and said we're not persuaded. That seems like reviewing the factual findings to me. I don't, I think the board just weighed that finding differently. I mean, the board didn't substitute anything and say, oh, no, he has done such and such and such instead. The board simply said that wasn't enough to overcome his preceding years of behavior. What did the board mean when it used the words we're not persuaded? It simply wasn't moved by those intervening years, I suppose. I am, I can't, sorry, I'm not trying to be vague. Ultimately, it's a discretionary determination that the court does not have jurisdiction to review. So if there's no further questions, we'd ask that you deny or dismiss the alternative petition for review. Thank you. Yes, Your Honor. We just begin briefly with this question about this court's jurisdiction. I think my friend's argument is a bit like the kettle calling the pot black, you know, jurisdictional argument, which comes at the end of the government's brief. In this case is unusual. Usually a jurisdictional argument would come come at the beginning. This court certainly has jurisdiction to review the question of whether the board has transgressed its own regulatory authority. And that's what Mr. Meritor is asking this court to do. My friend characterized the question in this case as one of the interplay between two statutes. And I think that's exactly right. Questions between questions about the interplay between two federal statutes are very much so questions that federal courts should resolve. That's that's what the Supreme Court said in the J.M. case. And in the Palm Wonderful case, applying the traditional canons of construction, as the court did in J.M. and Palm Wonderful. The question before the court is whether this second statute that exists in the immigration code, paragraph D14, somehow impacts the import of the first previously enacted statute applying the traditional canons. The answer to that question is no. There's no we don't have congressional intent, let alone clear and manifest congressional intent. And we don't have true irreconcilable conflict. We haven't talked about today the DOJ regulations that are important in this case. The DOJ regulations that Judge Easterbrook recently looked at in the Bea Sanchez case. If I understand my friend's argument correctly, the government is not contesting that the attorney general has broad authority under paragraph D3 to grant waivers of inadmissibility in a broad variety of contexts. Let me ask you a third question. Do you know of any cases where immigration judges have made a D3A waiver for a non-immigrant that's seeking a different type of visa? Not cases, Your Honor, but there are regulations that contemplate that an immigration judge has authority, has specific authority under D3 to grant waivers in a variety of contexts. I would direct Your Honor to footnote 3 on page 14 of our reply brief, which lists regulations that allow the immigration judge to grant specifically a D3 waiver in essentially any context, any procedural context in which the immigration judge has a proceeding. And the other regulations, I think, bear on the question before the court. Do you say that the DOJ has the same authority that the attorney general has? It's virtually an instrumentality of the Department of Justice? Because, yes, but not just because the immigration judge is an instrumentality of the Department of Justice. That's fine, but do they have the same authority that the attorney general has? Yes, as the 7th Circuit just held in Bea Sanchez. I would direct Your Honor to the regulations. This is 8 CFR 1003.10 A and B. The first regulation, this is the A regulation, specifically provides that immigration judges shall act as the attorney general's delegates. And the neighboring provision, which is essentially overlooked by both the Board of Immigration Appeals and the government, specifically empowers immigration judges to take any action that is necessary in the disposition of the cases that come before them. These cases, these two regulations, as the 7th Circuit held in Bea Sanchez, recognize that immigration judges enjoy broad authority as the attorney general's delegates. At the end of the day, however, this is a case about statutory interpretation. There's nothing about paragraph D14 that suggests that it was intended to divest the attorney general of his D3 power to grant waivers of intimacy. Did the DOJ in this case think that she had the authority to make the waiver? The immigration judge did think she had the authority to grant. Or was she simply saying that that's what she would do so as to urge a favorable consideration on the reconsideration that was pending before the board? The immigration judge indicated, Judge Slavin indicated, that she was aware of this issue, which is percolating, and that she was familiar with the 7th Circuit's then-recent decision in LDG. Judge Slavin spent considerable time analyzing the legal question, the same question that is before the court, and Judge Slavin determined that she did have concurrent authority in line with LDG to grant the waiver. I would urge this court to reach the same holding and to avoid the brand X issue to do so based on the plain language of paragraph D3. All right, thank you, counsel. Thank you.